# Exhibit A

{00101048}

RESIDENTIAL CONTRACT (Revised 03/15/18)  © 2018 by Buffalo Niagara Association of REALTORS®, Inc ("BNAR")
Prior versions are obsolete.  © 2018 by Bar Association of Erie County ("BAEC")




**Modifications of this form must be clearly shown.**

This Contract is recommended for the sale of improved or unimproved residential real estate. If used for new construction or commercial real estate, appropriate modification is required.

**CAUTION:** This Contract contains an Attorney Approval Contingency. **Read Paragraph ATC1 carefully.**
**CAUTION:** Substituting pages of a signed Contract could result in an unenforceable Contract or a Fraud Claim.

# CONTRACT

Date: _____11/28/2023_____ ("Contract Date")

1. **PARTIES.** The parties are as follows (individually a "Party" and collectively the "Parties"):
   (A) **Seller:** Muwafak Rizek ("Seller")
       Address: 7924 Keystone Rd    Orland Park    IL    60462    **(Property address if blank)**
   (B) **Purchaser:** Michael Gersitz ("Purchaser")
       Address: 2468 Niagara Falls Blvd #    Tonawanda    NY    14150

2. **AGREEMENT.** Seller shall sell and Purchaser shall purchase the items described in Paragraphs 3(A) through 3(D) ("Property") and the items described in Paragraph 3(E)(1) - (5) as being included ("Included Items") on the terms stated in this contract, including Paragraphs ATC1 through ATC14 of the attached BAEC/BNAR approved Additional Terms and Conditions (Rev. 03/15/18) ("ATC"), as well as the Riders and attachments referenced in Paragraphs 3(B) and 16 which all Parties have signed and/or initialed (including all changes) as applicable ("Contract"). This Contract uses defined terms shown as an initial capitalized word(s), initially in quotes and parentheses or as defined in Paragraph ATC13. Unless otherwise indicated, all paragraph references are to paragraphs of this Contract. References to paragraph numbers which are preceded by letters refer to the corresponding riders listed in Paragraph 16. All defined terms and paragraph references used in this Contract shall have such meanings throughout, and in all modifications of, this Contract.

3. **PROPERTY.**
   (A) **Address.** No. & Street: 286 & 290 Oliver Street    Zip Code: 14120
       County of    Niagara    ("County"), Town/City of    North Tonawanda   , Village of: _____, NY.
       Tax Map Identifier (Section-Block-Lot Number) _____
   (B) **Additional Description.**
       ☐ Per attached map/survey map   ☐ Per attached legal description   ☒ Approximate Lot Size: 79*164
       ☐ Includes interest in a homeowners' association: See *Condominium/Homeowners' Association Rider*
       ☐ Condominium Unit: See *Condominium/Homeowners' Association Rider*
   (C) **Current Uses/Improvements:** ☒ 3 Family dwelling   ☐ with ___ car garage
       ☒ Vacant Land: See *Vacant Land Rider*.   ☒ Additional uses/improvements (specify): 1 Storefront
   (D) **Land and Other Items.** Unless excluded in Paragraph 3(E), the following items are included:
       (1) All land; trees; buildings; improvements; oil, gas and mineral rights; and rights appurtenant to the land.
       (2) All fixtures and property attached or appurtenant to the land, buildings and improvements including: all heating, air conditioning (except window units), plumbing (including septic systems, well pumps, water pumps, sump pumps, water filtration systems and water softeners), electrical and mechanical systems (including hard wired electricity generators); plumbing fixtures; lighting fixtures (including bulbs) and landscaping (except free standing planters); matching kitchen islands; storm windows, storm doors, screens and awnings; exterior T.V. antennas and satellite dishes; garage door openers; weather vanes; window boxes; mail boxes; utility sheds; fences; underground electric pet fencing and equipment; flag poles; in-ground or garage mounted basketball backboards and poles; gas operated post-type outdoor grills; in-ground and above-ground pools and related equipment; wood burning stoves, oil and gas fired space heaters, fireplaces, fireplace inserts, screens (including free-standing screens), grates and glass enclosures; wall to wall carpeting and attached runners; linoleum; garbage disposals; ceiling fans, exhaust fans and hoods; security systems; intercom systems; central

286 & 290 Oliver Street    North Tonawanda    NY    14120
NY                                                      MG
Seller Initials    Page 1 of 13    Purchaser Initials

Instanet FORMS

       vacuuming systems (including all hoses and attachments); smoke detectors; carbon monoxide detectors; mirrors; window shades, curtain rods and traverse rods; all styles of window and door blinds; cabinet and wall-mounted appliances; all transferable trash and recycling containers provided by a municipality or service company; and all motors, transmitters, receivers, controls, system operation keys, remote units and all component parts.

    (3) If presently on the Property and unless free-standing, all cabinets, shelving, dishwashers, refrigerators, ovens, cooktops, ranges, microwave ovens, trash compactors, humidifiers, dehumidifiers and air filtration systems.

    (4) Seller's rights in and to public and private streets, highways, alleys, driveways, easements and rights of way.

    (5) Seller's rights to receive all future rents and royalties due under any lease, agreement or tenancy.

(E) **Included and Excluded Items.** The following items are included or excluded as follows: *("Excluded" if blank)*
    (1) Hot tub(s)/spa(s) and related equipment are ............................ ☐ Included; ☐ Excluded; ☒ N/A
    (2) Outdoor play set(s) are .................................................... ☐ Included; ☐ Excluded; ☒ N/A
    (3) Speakers (recessed, wall mounted and outdoor) and speaker wiring are .. ☐ Included; ☐ Excluded; ☒ N/A
    (4) The following items are included: all appliances set forth in Paragraph RPR1,_____
    which are included with no increase in the Purchase Price and which nevertheless must be left:
      ☐ (a) in substantially the same condition as of the date of the Property Inspection (as defined in Paragraph 9) or if none is conducted, as of the Contract Date, subject to the obligations in Paragraph 5 ("As-is"); or
      ☐ (b) in the condition existing at Closing (as defined in Paragraph 4(C)) *("(a)" if blank)*.
    (5) Unless specifically included in Paragraph 3(E), Paragraph 20 or a rider or addendum to this Contract, the following items are excluded: furniture; household furnishings; televisions, including brackets; and also _____.

4. **PURCHASE PRICE.** The purchase price ("Purchase Price"), payable in U.S. Dollars as follows, is $ 225,000.00
   (A) **Seller's Concession.** At Closing, Seller shall credit to Purchaser the sum of *("0" if blank)* ("Seller's Concession") ......................................................................................... $ _____
   (B) **Deposit.** The following deposit ("Deposit"), payable to and held in escrow by _____ ("Escrow Agent") at _____ ("Bank") $ 7,000.00
     ☐ (1) When Purchaser signs this Contract;
     ☒ (2) Within 2 Business Days (as defined in Paragraph ATC13(C)) following:
       ☐ (a) The Effective Date (as defined in Paragraph ATC13(D)).
       ☒ (b) Satisfaction or waiver of the Attorney Approval Contingency (as defined in Paragraph ATC1).
       ☐ (c) Satisfaction or waiver of the Property Inspection Contingency (as defined in Paragraph 9(A)(1)) or the Investigation Contingency (as defined in Paragraph VLR4(B)).
       ☐ (d) The later of (b) and (c).
   The Deposit and any additional deposit paid pursuant to this Contract, if applicable (collectively "Deposits"), shall be deposited by Escrow Agent with the Bank within 5 Business Days following receipt. Escrow Agent will promptly notify Seller's attorney if any Deposits are not received on time. In the event any of the Deposits are not received by Escrow Agent within 3 Business Days after payment is due, Seller may cancel this Contract at any time prior to Escrow Agent's receipt of whichever of the Deposits was past due.
   (C) **Adjusted Balance.** Upon delivery of the deed ("Closing"), the Purchase Price less (i) the Seller's Concession, *and* (ii) the Deposits, subject to closing adjustments and credits as provided in this Contract ("Adjusted Balance").

5. **CONDITION OF PROPERTY AND INCLUDED ITEMS.**
   (A) Except as otherwise provided in this Contract, until Closing, Seller shall, at Seller's expense:
     (1) maintain the Property and Included Items in substantially the same condition as of the date of the Property Inspection, if any, or if no Property Inspection is conducted, as of the Contract Date;
     (2) perform ordinary lawn and landscape maintenance and snow removal; *and*
     (3) maintain all utilities in service that are required for the operation of the heating, air conditioning, plumbing, security and electric systems.
   (B) Except as provided in the Property Condition Disclosure Statement provided by Seller before Purchaser signed this Contract ("PCDS") and in Paragraphs 5(A), 5(C), 6, 8, 13, ATC4 and, if applicable, ADR1, LBPR4 and VLR2, Seller makes no representations, warranties or disclosures as to the condition of the Property and Included Items.
   (C) Subject to (i) any rights of Purchaser under Paragraphs 9, 12(D) and LBPR5(B), (ii) Seller's obligations under Paragraphs 5(A), 5(D), 12 and 13, and (iii) Seller's obligation to complete all repairs agreed to in writing, Purchaser shall accept the Property in substantially the same condition (a) as of the date of the Property Inspection, if any, or if no Property Inspection is conducted, as of the Contract Date, and (b) as disclosed in the PCDS, if any, and shall accept the Included Items as set forth in Paragraph 3(E)(4).

286 & 290 Oliver Street     North Tonawanda  NY  14120

Seller Initials      Page 2 of 13       MG   Purchaser Initials

Instanet FORMS

(D) The Property shall be in "broom clean" condition and free of debris on the date of Closing.

6. **SELLER'S DISCLOSURES.** Seller makes the following disclosures to the best of Seller's knowledge:

| | | | |
|---|---|---|---|
| ☒ Yes | ☐ No | (A) | **Title.** Seller has title to the Property, subject to the provisions of Paragraph ATC5, and Seller owns the Included Items. |
| ☐ Yes | ☒ No | (B) | **Agricultural District.** The Property is located partially or wholly within an agricultural district. If "Yes", see *Agricultural District Rider*. |
| ☐ Yes | ☒ No | (C) | **Utility Surcharge.** The Property is subject to a utility (e.g. gas, electricity, water) surcharge. If "Yes": Type/Purpose: _____ Amount: _____ Payable (i.e. monthly, yearly): _____ |
| ☐ Yes | ☒ No | (D) | **Water Well.** The Property has a private water well and/or other non-public water supply. |
| ☒ Yes | ☐ No | (E) | **Public Water.** The Property is connected to a public water supply. |
| ☐ Yes | ☒ No | (F) | **Septic System.** (1) The Property has a private septic system approved for _____ bedrooms. (2) If yes, the dwelling(s) on the Property: *(Answer all.)* |
| ☐ Yes | ☐ No | | (a) will have been continuously occupied prior to the inspection to obtain a Certificate/Approval (as defined in Paragraph 12(B)) for the private septic system ("Septic Inspection"); *or* (b) will have been vacant for less than 90 days immediately prior to the Septic Inspection *and* |
| ☐ Yes | ☐ No | | (i) is serviced by metered water |
| ☐ Yes | ☐ No | | (ii) the County Health Dept. has a record of the current private septic system. |
| ☐ Yes | ☐ No | | (c) will have been vacant for more than 90 days immediately prior to the Septic Inspection. |
| ☒ Yes | ☐ No | (G) | **Public Sewers.** The Property is connected to public sanitary sewers. |
| ☐ Yes | ☒ No | (H) | **Heating Oil/Propane.** The Property is serviced by heating oil and/or propane. |
| ☐ Yes | ☒ No | (I) | **Gas and Oil Wells.** The Property has an uncapped natural gas and/or oil well, even if inactive. |
| ☐ Yes | ☒ No | (J) | **Oil/Gas/Mineral Leases.** Seller has received, is receiving or is entitled to receive rents, royalties or other payments and/or free gas under any oil or gas or mineral lease affecting the Property. |
| ☐ Yes | ☒ No | (K) | **Flood Zone.** The Property is currently located in a special flood hazard zone. Note: If Yes, flood insurance will likely be required by an institutional lender. |
| ☐ Yes | ☒ No | (L) | **Radon.** The Property has been tested for radon. |
| ☐ Yes | ☒ No | (M) | **Special Tax/Preservation District.** The Property is located in a Special Tax District and/or Preservation District, namely:_____. |
| ☐ Yes | ☒ No | (N) | **Tax Exemption.** (1) The Property tax bill(s) reflect(s) a tax exemption (e.g. STAR, veteran's). |
| ☐ Yes | ☐ No | | (2) If yes, Seller is entitled to the exemption on the most recent tax bills. |
| ☐ Yes | ☒ No | (O) | **Special Tax Assessments.** The Property is subject to assessments for special or local improvements (e.g. sidewalks, water/sewer lines)("Special Tax Assessments"). |
| | | (P) | **Vehicular Access.** Vehicular access to the Property is currently by way of: |
| ☒ Yes | ☐ No | | (1) a contiguous municipal road right of way. |
| ☐ Yes | ☐ No | | (2) a contiguous, shared private road right of way of record. |
| ☐ Yes | ☒ No | (Q) | **Shared Driveway.** The Property is serviced by a shared driveway. |
| ☐ Yes | ☒ No | (R) | **Court Orders.** Seller is currently subject to a court order that prohibits the sale or transfer of the Property without the consent of another person or further court order. |
| ☒ Yes | ☐ No | (S) | **Bankruptcy.** Seller is currently in bankruptcy. |
| ☐ Yes | ☒ No | (T) | **Foreclosure.** The Property is currently the subject of a foreclosure proceeding or a mortgage encumbering the Property that is in arrears in excess of 60 days. |
| ☒ Yes | ☐ No | (U) | **Sufficient Funds.** Including the proceeds from the sale of the Property, Seller has sufficient funds to close this transaction and pay all of Seller's closing costs and expenses. |
| ☐ Yes | ☒ No | (V) | **Code Violations.** Notice from a governmental authority has been issued advising that the Property and/or Current Uses/Improvements (as defined in Paragraph 12(A)) violate applicable building codes and/or zoning ordinances, any of which violations continue as of the Contract Date. |
| ☐ Yes | ☒ No | (W) | **FIRPTA Certification.** Seller is a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as defined in the Internal Revenue Code and IRS Regulations). |

7. **CLOSING FUNDS.**
   (A) **Purchaser's Representations.** Purchaser represents that except for the proceeds of any financing selected in Paragraph 10 or as otherwise accepted by Purchaser and any Seller's Concession:

286 & 290 Oliver Street    North Tonawanda   NY   14120

Seller Initials _____    Page 3 of 13    Purchaser Initials  MG

Instanet FORMS

Authentisign ID: 170FFE7E-5A8E-EE11-8925-6045BDD68161
Case 23-06821   Doc 75-1   Filed 12/27/23   Entered 12/27/23 16:26:29   Desc Exhibit A   Page 5 of 20

BAEC/BNAR Residential Contract (Rev. 03/15/18)

(1) Purchaser is, and until Closing will be, in **actual possession** of sufficient money in U.S. dollars **on deposit** with a federally insured bank, trust company, savings and loan association or credit union ("Financial Institution") to close this transaction. .............. ☒ Yes ☐ No

(2) In order to close this transaction, Purchaser does, or Purchaser's lender may, require:
  (a) the closing of the sale of any other real estate or the discharge of any mortgage for which Purchaser is liable ......................................................... ☐ Yes ☒ No
  (b) the receipt of a gift of funds ......................................................... ☐ Yes ☒ No

(B) **Sale Contingency.** This Contract is contingent upon the sale of other real estate as provided in the *Sale Contingency Rider* ("Sale Contingency") ...................... ☐ Yes ☒ No

(C) **Closing Contingency.** This Contract is contingent upon the closing of the sale of Purchaser's real estate located at _____ ("Purchaser's Property"). . ☐ Yes ☒ No
If yes, either Party may cancel this Contract after any material breach, termination or cancellation of the contract for Purchaser's Property or upon proof that the closing of the sale of Purchaser's Property has not occurred within 10 Business Days after the Contract Closing Date (as defined in Paragraph 14(A)). Purchaser shall notify Seller within 3 Business Days after any material breach, termination or cancellation of the contract for Purchaser's Property.

8. **LEAD-BASED PAINT DISCLOSURE.** Seller represents that: *Choose either (A) or (B) below.*
  ☒ (A) **Pre-1978 Construction.** The dwelling(s) on the Property was/were or may have been built prior to 1978. A *Lead Based Paint Rider* **must** be attached to this Contract.
  ☐ (B) **Post-1977 Construction.** The dwelling(s) on the Property was/were built in 1978 or later.

9. **INSPECTION OF PROPERTY AND INCLUDED ITEMS.** *Choose either (A) or (B) below.* **("(A)" if blank)**.

| MG | | | | CAUTION: New York law requires that any paid property inspector be properly licensed by the State. The use of a non-licensed inspector or election not to have a property inspection conducted shall be at Purchaser's own risk. |
|---|---|---|---|---|
| Purchaser Initials | | | | |

☐ (A) **Property Inspection to be conducted.**
  (1) **The Inspection.** Purchaser shall have the right to have the Property and Included Items inspected and/or tested by inspector(s) chosen and paid for by Purchaser ("Property Inspection") *and* any notice of unsatisfactory results pursuant to Paragraph 9(A)(4) shall be completed within _____ **("7" if blank)** days following the later of (i) satisfaction or waiver of the Attorney Approval Contingency, or (ii) if all applicable utilities are not in service on the Effective Date, the date Purchaser or Purchaser's attorney receives a notice given by Seller that all applicable utilities are in service ("Inspection Period"). The scope of the Property Inspection shall be determined by Purchaser, but shall not, without the consent of Seller, result in damage to the Property or Included Items. Seller will cooperate with Purchaser's reasonable requests, but need not consent to any damage to the Property or Included Items. The results of the Property Inspection must be satisfactory to Purchaser ("Property Inspection Contingency").
  (2) **Radon Notice.** Radon is a colorless, odorless, tasteless gas that can seep into homes through cracks and openings in a home's foundation. Inhalation of radon gas is associated with increased risk of lung cancer. Testing for the presence of radon in residential real estate prior to purchase is advisable.
  (3) **Radon Test.** The Property Inspection will include a radon test **("Yes" if blank)**. ..... ☐ Yes ☐ No
  (4) **Notice of Results and Right to Cancel Contract.** If the results of the Property Inspection are not satisfactory to Purchaser for any reason whatsoever, *and* if notice of the unsatisfactory results of the Property Inspection *is received by Seller or Seller's attorney on or before the expiration of the Inspection Period,* either Party may cancel this Contract. The results need not be disclosed. If the notice under this Paragraph 9(A)(4) is not timely received by Seller or Seller's attorney, the Property Inspection Contingency is deemed waived by Purchaser.

☒ (B) **No Property Inspection.** Except for the Final Inspection (as defined in Paragraph ATC7), Purchaser elects not to have a Property Inspection conducted. This election shall not be deemed to waive or expand any other rights Purchaser may have under this Contract or at law.

10. **FINANCING.** *Choose all that apply below* **("(A)" if blank)**.
  ☐ (A) **No Financing.** Purchaser will close this transaction without financing.
  ☒ (B) **New Loan(s).**
    (1) **Application.** Purchaser shall promptly and in good faith, but in no case later than _____ **("5" if blank)** days after satisfaction or waiver of the Attorney Approval Contingency, Property Inspection

286 & 290 Oliver Street      North Tonawanda, NY  14120

Seller Initials         Page 4 of 13         MG  Purchaser Initials

instanet FORMS

Authentisign ID: 170FFE7E-5A8E-EE11-8925-6045BDD68161
Case 23-06821    Doc 75-1    Filed 12/27/23    Entered 12/27/23 16:26:29    Desc Exhibit A    Page 6 of 20

BAEC/BNAR Residential Contract (Rev. 03/15/18)

Contingency, Lead-Based Paint Inspection Contingency (as defined in Paragraph LBPR5(B)), Sale Contingency and Investigation Contingency, if applicable, make application for and diligently and in good faith pursue and accept a Loan Commitment (as defined in Paragraph 10(B)(3)) for one or more of the following loans *(NOTE: More than one loan type may be selected, but Purchaser need not apply for all loan types selected)* ("Loan").

☒ **(a) First Loan:**
  **(i) Loan Amount** is not to exceed ☐ $_____; or ☒ __80__ % of the Purchase Price, plus any financed Private Mortgage Insurance, Mortgage Insurance Premium or VA Funding Fee ("Loan Amount").
  **(ii) Loan Type** is: ☒ Conventional  ☐ FHA  ☐ VA *(See FHA/VA Option Clause)*  ☐ SONYMA; ☐ Other: _____ *("Conventional" if all blank)*.
  **(iii) Loan Term** is: ☐ 30 year; ☐ 20 year; ☐ 15 year; ☒ __25__ year *("30 year" if all blank)*.
  **(iv) Interest Rate** is: (Reference to "prevailing" rate is not permissible)
      ☒ a fixed rate not to exceed __8__ % per year for a fixed rate loan, **or**;
      ☐ an initial interest rate not to exceed _____ % for an adjustable rate loan.
  **(v) Loan Discount Fees** are not to exceed _____ *("0" if blank)* % of the Loan Amount.

☐ **(b) Second Loan/Grant** is a _____ year ☐ Fixed Rate ☐ Adjustable Rate loan/grant in an amount not to exceed ☐ $_____; or ☐ _____ % of the Purchase Price with an interest rate (initial or fixed) not to exceed _____ %.

**(2) Interest Rate Protection.** Provided Purchaser complies with the provisions of Paragraph 10(B)(1), Purchaser may cancel this Contract if, at the time of loan application, Purchaser is not able to lock in at interest rates and loan discount fees at or below the rates and fees set forth in Paragraph 10(B)(1). If an interest rate is not set forth in Paragraph 10(B)(1) or, if Purchaser elects not to lock in an interest rate at the time of application (i.e. to "float"), Purchaser shall be obligated to accept a Loan Commitment for the applicable loan at any available interest rate with any required loan discount fees. Purchaser must lock in an interest rate no later than 10 days before the Contract Closing Date.

**(3) Commitment.** The written approval of Purchaser's application for a loan must have commitment and interest rate expiration dates after the Contract Closing Date **and must not** be conditioned upon: initial underwriting approval by the lender, verification of credit, receipt of an appraisal, payment of debt (other than mortgage(s) encumbering Purchaser's Property if Paragraph 7(A)(2)(a) is answered "Yes"), verification of funds or initial verification of employment ("Loan Commitment"). Purchaser shall deliver to Seller's attorney a *complete* copy of the Loan Commitment and notice of its acceptance by Purchaser within 3 Business Days after Purchaser's acceptance of a Loan Commitment. If a Loan Commitment within the terms set forth in Paragraphs 10(B)(1) through 10(B)(2) is not issued to and accepted by Purchaser by (choose either (a) or (b) below *("(b)" if both (a) and (b) blank))*
  **(a)** ☐ _____ *[insert date]*; or
  **(b)** ☒ _____ *("45" if blank)* days after the later of (1) the Effective Date; or (2) satisfaction or waiver of the latest of any applicable (i) Sale Contingency, (ii) Investigation Contingency, (iii) Property Inspection Contingency, or (iv) _____
  ("Loan Commitment Due Date"), either Party may cancel this Contract at any time prior to Purchaser's acceptance of a Loan Commitment on terms the same as or different than those set forth in Paragraphs 10(B)(1) through 10(B)(2). Either Party may cancel this Contract if a Loan Commitment is granted but later cancelled without fault on the part of Purchaser. Purchaser shall promptly notify Seller of any Loan Commitment cancellation.

**(4) Cooperation.**
  **(a)** Seller shall promptly and in good faith cooperate with reasonable requests by Purchaser's lender(s) to provide access to the Property and Included Items and to execute documents which, except for the FHA/VA Option Clause, do not modify the terms of this Contract.
  **(b)** Purchaser hereby authorizes and agrees to execute any documents required to authorize Purchaser's lender(s) to deliver a complete copy of each Loan Commitment, without any account numbers shown, to Seller's attorney and the Brokers (as defined in Paragraph 19).
  **(c)** Prior to Closing, Purchaser shall not intentionally do anything to adversely affect Purchaser's qualification for the Loan (by way of example only, incur any significant additional debt or voluntarily change employment that will result in a disqualification for the Loan.)

☐ **(C) Loan Assumption.** A loan is being assumed (See *Loan Assumption Rider*).
☐ **(D) Seller Financing.** Seller is holding a purchase money mortgage (See *Seller Financing Rider*).

**11. STATUS OF TITLE.** Purchaser will accept title to the Property and Included Items subject to the encumbrances set forth in Paragraph ATC5 and: _____ *("Nothing further" if blank)*.

286 & 290 Oliver Street          North Tonawanda    NY    14120

Seller Initials                     Page 5 of 13                    *MG* Purchaser Initials

Instanet FORMS

12. **IMPROVEMENTS.**
   (A) **Intended Uses and Improvements.** *CAUTION: This Property may have easements, rights of way and restrictions which may affect intended uses of or improvements to the Property. Purchaser acquires the Property subject to these encumbrances unless intended uses or improvements, different from the current uses and improvements as set forth in Paragraph 3(C) ("Current Uses/Improvements"), are listed below.*
      (1) Purchaser intends to use the Property for a ☐ one ☐ two ☐ three ☐ four -family dwelling or ☒ other ___3 family, 1 storefront___ ("Intended Uses").
      (2) Purchaser intends to make the following specific improvements on or modifications to the Property or make the following specific use of the Property (for example, erection of fence, swimming pool or garage, parking of recreational vehicles): _____ ("Intended Improvements").
      (3) If any Intended Uses or Intended Improvements, different from the Current Uses/Improvements, are listed in subparagraphs (1) and/or (2) above, within 10 Business Days after the Effective Date, Seller will provide Purchaser with a copy of Seller's existing survey map and of all restrictions, easements and rights of way affecting the Property as is or should be disclosed in the Search and/or Survey. If Purchaser finds that any restriction, easement or right of way is inconsistent with any of the above-stated Intended Uses or Intended Improvements, then Purchaser may cancel this Contract within 7 Business Days after receipt of (i) a copy of Seller's existing survey map or, if not available, the Survey, and (ii) a copy of all restrictions, easements and rights of way required to be provided by Seller under this Paragraph 12(A)(2).
   (B) **Certificates/Approvals.** Seller shall obtain certificates/approvals valid through the date of Closing issued by appropriate governmental authorities evidencing compliance with all applicable laws, ordinances, regulations and codes relating to the Current Uses/Improvements and as disclosed in this Contract (excluding the Intended Uses and Intended Improvements which are different from the Current Uses/Improvements) as required by the appropriate governmental authorities for the transfer of the Property (for example: certificate of occupancy, sump pump certificate and approvals of non-public sewage disposal and water supply) ("Certificates/Approvals"). However, Seller shall have no obligation to supply a certificate of occupancy or certificate of compliance for occupancy of the Property if the Property has been occupied solely as a one or two family dwelling.
   (C) **Order and Delivery.**
      (1) **Order.** Certificates/Approvals not already in Seller's possession shall be ordered, all applicable testing and inspections shall be requested, and all applicable application fees shall be paid by Seller no later than 7 Business Days after the later of (i) the Effective Date, and (ii) the satisfaction or waiver of the Attorney Approval Contingency, Property Inspection Contingency, Lead-Based Paint Inspection Contingency, Sale Contingency and Investigation Contingency, if applicable. Any additional fees shall be paid promptly by Seller.
      (2) **Delivery.** Seller shall deliver to Purchaser's attorney a copy of all Certificates/Approvals at least 5 Business Days prior to the Contract Closing Date, except if delayed pursuant to Paragraph 12(D). The originals of all Certificates/Approvals obtained shall be delivered to Purchaser at Closing.
   (D) **Objections.** If Purchaser gives Seller notice of valid objection to the legal status or legal use of any of the structures or other improvements located on the Property ("Condition Defects"), or if Seller receives notification from the applicable governmental authority that there is any problem which needs to be corrected before any one or more of the Certificates/Approvals can be obtained ("Corrective Faults"), Seller shall, at Seller's sole expense, correct the Condition Defects and Corrective Faults, and have all necessary governmental inspections completed, prior to the Contract Closing Date. However, Seller may, within 10 Business Days following receipt by Seller or Seller's attorney of a notice of Condition Defects, a notice that Corrective Faults must be corrected, and/or a notice that an inspection cannot be conducted due to weather conditions, governmental delays or governmental policies, notify Purchaser that Seller will not (i) correct the Condition Defects and/or Corrective Faults, and/or (ii) obtain one or more Certificates/Approvals (a "Non-Correction Notice") provided Seller has timely complied with Seller's obligations under Paragraph 12(C)(1), if applicable. If, within 10 Business Days following receipt by Purchaser or Purchaser's attorney of a Non-Correction Notice, Purchaser does not elect to accept the Property and Included Items subject to the Condition Defects and Corrective Faults and without Certificates/Approvals which cannot be obtained, either Party may cancel this Contract. Nothing in this Paragraph 12 is intended to affect the rights of Seller or Purchaser under General Obligations Law Section 5-1311, or as otherwise provided under this Contract.

13. **KEYS.** At Closing, unless the Parties have made other prior satisfactory arrangements, Seller shall deliver to Purchaser all keys, security and access codes, and remote control openers (which must be in working order) for the Property, except as follows: _____ ("no exclusions" if blank).

14. **CLOSING.**
   (A) **Closing Date.** Closing shall be at the County Clerk's Office on the date set forth below or, if that date is not a Business Day, on the next Business Day. ("(2)" if both (1) and (2) blank). Time is not of the essence.
      ☐ (1) _____ *[insert date]*, or
      ☒ (2) ____ ("60" if blank) days after the later of (a) the Effective Date; or (b) satisfaction or waiver of the latest

286 & 290 Oliver Street      North Tonawanda      NY    14120

Seller Initials      Page 6 of 13      *MG* Purchaser Initials

Instanet FORMS

Authentisign ID: 170FFE7F-5A8E-EE11-8925-6045BDD68161
Case 23-06821   Doc 75-1   Filed 12/27/23   Entered 12/27/23 16:26:29   Desc Exhibit
A   Page 8 of 20

BAEC/BNAR Residential Contract (Rev. 03/15/18)

of any applicable (i) Sale Contingency, (ii) Investigation Contingency, (iii) Property Inspection Contingency, or (iv)_____.
(the "Contract Closing Date"), or at such other time and place as the Parties mutually agree.

(B) **Time of Essence Notice.** Either Party (the "Declaring Party") may, at any time after the Contract Closing Date, notify the other Party that time is of the essence, which notice shall set a specific time for Closing on a Business Day that is on or after the 7th Business Day following receipt of the notice by the other Party or the other Party's attorney, provided (i) the Declaring Party has completed each obligation required of the Declaring Party by this Contract to be completed prior to Closing (a "Pre-Closing Obligation"), (ii) the number of days specified in this Contract for the completion of a Pre-Closing Obligation prior to Closing, if applicable, has or will have elapsed following actual completion of the Pre-Closing Obligation, (iii) the number of days available under this Contract to the other Party following the completion of a Pre-Closing Obligation, if applicable, has or will have elapsed following actual completion of the Pre-Closing Obligation, and (iv) the contingencies in this Contract for the benefit of the Declaring Party have been satisfied or waived, or, absent a default by the other Party, will or could be satisfied at Closing.

15. **TAXES, ADJUSTMENTS AND CREDITS.**
   (A) **Special Tax Assessments.** Purchaser will accept title to the Property subject to, and will pay, all Special Tax Assessments that may be payable in installments not yet due and payable as of Closing. Any Special Tax Assessment payable in installments may be so paid on the installment due date at the election of Seller.
   (B) **Water Charges and Delinquent Taxes.** Seller shall pay all water charges until Closing and all prior fiscal years' taxes and tax assessments, including interest and penalties.
   (C) **Items To Be Adjusted.** There shall be prorated and adjusted, as of 12:00 midnight prior to the date of Closing: rents; royalties; propane; fuel oil; mortgage interest for assumed mortgages; all current fiscal years' taxes, assessments and installments of amounts appearing on current tax bills computed on a fiscal year basis; Special Tax Assessments; flat rate water charges; sewer charges; user fees; license and/or registration fees; and the following items: _____. For adjustment purposes, all rents and royalties due as of the date of adjustment will be considered paid to Seller. If Closing occurs before a new tax rate is fixed, the apportionment of taxes shall be made on the basis of the most recent tax rate applied to the latest assessed valuation and the provisions of Paragraph 15(E) shall not apply.
   (D) **Items To Be Credited.** There shall be assigned and/or credited to the appropriate Party at Closing: security deposits and any accrued interest thereon; assumed mortgage escrows; the principal balance of and any accrued interest on any assumed mortgage; the principal balance of and any interim interest on any mortgage held by Seller; all penalties and interest on current fiscal years' taxes, assessments and Special Tax Assessments due as of Closing; increases in taxes due to an exemption termination, removal or revocation for the period from the date of the loss of the exemption to the date of Closing; any meter purchase fees; and any other credits provided for in this Contract.
   (E) **Post Closing Adjustment.** Any errors and/or omissions in the Closing computations of adjustments, credits and/or taxes, including any increases due to an exemption, termination or removal, which exceed $100.00 in the aggregate, shall be corrected upon discovery and paid within a reasonable period of time following a demand for payment.
   (F) **Loans.** All loans which appear on any tax and/or utility bill(s) shall be paid in full by Seller prior to or at Closing.

16. **RIDERS AND ATTACHMENTS.** This Contract includes the following Riders and attachments marked below:
   ☐ *Lead-Based Paint Rider ("LBPR")*      ☐ *Rented Property Rider ("RPR")*      ☐ *Sale Contingency Rider ("SCR")*
   ☒ *Vacant Land Rider ("VLR")*            ☐ *Loan Assumption Rider ("LAR")*      ☐ *Seller Financing Rider ("SFR")*
   ☐ *Condominium/Homeowners' Association Rider ("CHAR")*   ☐ *Property Condition Disclosure Statement ("PCDS")*
   ☐ *FHA/VA Option Clause*                 ☐ *Agricultural Disclosure Rider ("ADR")*
   ☐ Other: _____ *("None" if blank)*

17. **SIGNATURES.** This Contract shall not become binding unless all Parties sign it, initial it (where appropriate) and deliver it so that it is received by all Parties or their respective attorneys no later than 5:00 p.m. on _____.
   *(If blank, this paragraph is not applicable).*

18. **ATTACHMENT OF ADDITIONAL TERMS AND CONDITIONS.**
   (A) **Receipt and Release.** By initialing this page, the Parties acknowledge having received and reviewed the attached ATC. *This Contract shall be void if all Parties do not acknowledge below that they received the ATC.*
   (B) **Changes.** Changes ☐ have ☐ have not *("have not" if blank)* been made to the ATC. If "have not", any changes made to the ATC other than in Paragraphs 1 through 20 or in any Rider or Addendum shall be ineffective.

Authentisign ID: 170FFE7F-5A8E-EE11-8925-6045BDD68161
Case 23-06821   Doc 75-1   Filed 12/27/23   Entered 12/27/23 16:26:29   Desc Exhibit
A   Page 9 of 20

BAEC/BNAR Residential Contract (Rev. 03/15/18)

**19. BROKERS.** The brokers listed below (individually a "Broker" and collectively the "Brokers") are:

| LISTING REAL ESTATE BROKER | SELLING REAL ESTATE BROKER |
|---|---|
| Broker / Agent / Lic.# | Signature Real Estate Services / Michael Gersitz / 10401334769 |
| Address | 2468 Niagara Falls Blvd Ste 5, Tonawanda NY 14150 |
| Office Phone/Fax / Brokerage Lic. # | 716-302-5222  716-525-1674 / 10991230315 |
| Other Phone / E-mail | michael.gersitz@signature-wny.com |

**20. OTHER TERMS.** *(If blank, this paragraph is not applicable.)* In the event of a conflict between the provisions of this paragraph and the provisions of any other paragraph of this Contract, the provisions of this paragraph shall control.

Contract is assignable.

**CAUTION:** *Any Property Condition Disclosure Statement provided by Seller must be delivered to Purchaser and a copy attached to this Contract before Purchaser signs this Contract.*

| Seller | Date | Purchaser *Michael Gersitz* | 11/28/2023 |
|---|---|---|---|
| Seller | Date | Purchaser | Date |
| Seller | Date | Purchaser | Date |
| Seller | Date | Purchaser | Date |

Signature of authorized agent of Escrow Agent _____ Date
Name of authorized agent: _____

Deposit received: ☐ Yes  ☐ No
[Must be signed even if Deposit has not been received.]

| SELLER'S ATTORNEY | PURCHASER'S ATTORNEY |
|---|---|
| Firm / Attorney | Gross Shuman P.C. / Nicholas J. Ingrassia |
| Address | 465 Main Street, Buffalo, N 14203 |
| Telephone / Fax | ( ) 854-4300 / ( ) 854-2787 |
| E-mail address | ningrassia@gross-shuman.com |

286 & 290 Oliver Street        North Tonawanda   NY   14120

Authentisign ID: 170FFE7F-5A8E-EE11-4925-6045BD268161
Case 23-06821    Doc 75-1    Filed 12/27/23    Entered 12/27/23 16:26:29    Desc Exhibit A    Page 10 of 20

BAEC/BNAR Residential Contract (Rev. 03/15/18)

# ADDITIONAL TERMS AND CONDITIONS

ATC1. **ATTORNEY APPROVAL CONTINGENCY.** *CAUTION: The deletion or modification of Paragraph ATC1(A) or Paragraph ATC1(B), unless such modification extends the Attorney Approval Period or Addendum Approval Period, shall result in the automatic withdrawal of any bar association approval of this form.*

   (A) **Contract Approval.** This Contract is contingent upon its approval by the Parties' respective attorneys ("Attorney Approval Contingency") within 3 Business Days following receipt by each Party's attorney of a complete copy of the Contract ("Approval Period"). Within 2 Business Days following the Effective Date, the Parties shall cause a complete copy of this Contract to be delivered to their respective attorneys if one has not already been delivered. In any event, the Approval Period shall commence no later than 2 Business Days following the Effective Date. If either Party's attorney disapproves this Contract before the end of the Approval Period, this Contract is deemed cancelled. The reason for the disapproval need not be disclosed. If either Party's attorney conditionally approves this Contract before the end of the Approval Period, either Party may cancel this Contract at any time prior to unconditional approval of this Contract by the attorneys for both Parties. If there is no disapproval, conditional approval or approval of this Contract by an attorney on behalf of a Party by the end of the Approval Period, this Attorney Approval Contingency is deemed waived by that Party. Disapproval, conditional approval or approval must be in writing and must be received by the attorney representing the other Party, if known, or if not known, the other Party, before the expiration of the Approval Period.

   (B) **Addendum Approval.** Any modification to this Contract which all Parties have signed and/or initialed (including all changes) as applicable ("Addendum") is contingent upon its approval by the Parties' respective attorneys ("Addendum Attorney Approval Contingency") within 3 Business Days following receipt by each Party's attorney of a complete copy of the Addendum ("Addendum Approval Period"). Within 2 Business Days following receipt of a duplicate or copy of the Addendum by both Parties or their respective attorneys (the "Addendum Effective Date"), the Parties shall cause a complete copy of the Addendum to be delivered to their respective attorneys, if one has not already been delivered. In any event, the Addendum Approval Period shall commence no later than 2 Business Days following the Addendum Effective Date. If either Party's attorney disapproves the Addendum before the end of the Addendum Approval Period, the Addendum is deemed cancelled (the reason for disapproval need not be disclosed), but this Contract shall remain in full force and effect, except (i) if either Party's attorney conditionally approves or disapproves an Addendum incorporating changes to this Contract upon which either Party's attorney's approval was conditioned, the attorney's conditional approval shall not be deemed satisfied or waived by the execution of the Addendum by all Parties; and (ii) if either Party's attorney disapproves a Property Inspection Notice and Addendum ("PINA") in which either PINA2(C) or PINA2(D) is selected, either Party may cancel this Contract. If, following unconditional approval of this Contract pursuant to ATC1(A), either Party's attorney conditionally approves an Addendum before the end of the Addendum Approval Period, either Party may cancel the Addendum at any time prior to unconditional approval of the Addendum by the attorneys for both Parties, but this Contract shall remain in full force and effect. If there is no disapproval, conditional approval or approval of the Addendum by an attorney on behalf of a Party by the end of the Addendum Approval Period, the Addendum Approval Contingency is deemed waived by that Party. Disapproval, conditional approval or approval must be in writing and must be received by the attorney representing the other Party, if known, or if not known, the other Party, before the expiration of the Addendum Approval Period.

ATC2. **SEARCH AND SURVEY.**

   (A) **Search.** Seller shall provide a tax and title search which covers the Property only, fully guaranteed by a title insurance corporation licensed under Article 64 of the Insurance Law ("Search"). Unless the standards adopted by the bar association applicable for the Property locality ("Bar Association") provide otherwise, the first set-out of the Search shall be the first recorded source of title in the County Clerk's Office or a deed to an apparent owner recorded prior to 1920. The last continuation of the Search shall be dated after the Contract Date. If the description certified to in the Search contains references to boundary or other prior instruments, the Search shall show, for information purposes, the descriptions contained in the instruments. Seller shall also provide local tax certificates where not covered by the Search.

   (B) **Survey.** Seller shall provide a survey map of the Property prepared according to the Bar Association standards or, if none, BAEC standards, from a survey of the Property performed after the Contract Date by a professional who is licensed or otherwise authorized under the New York Education Law to practice land surveying ("Survey"). If the Survey includes a certification or statement indicating for whom it was prepared the Survey must, at Seller's expense, be certified to Purchaser, Purchaser's lender(s), Purchaser's attorney and the title insurance agent(s) and company(ies) providing any title insurance in connection with this transaction.

   (C) **Order and Delivery.** Seller shall order the Search and Survey within 5 Business Days after the satisfaction or waiver of the Attorney Approval Contingency, Property Inspection Contingency, Lead-Based Paint Inspection Contingency, Sale Contingency and Investigation Contingency, if applicable. Seller shall deliver the Search,

local tax certificates and the Survey to Purchaser's attorney not less than 15 Business Days before the Contract Closing Date.

(D) **Return on Cancellation.** In the event this Contract is cancelled pursuant to any of its terms, Purchaser shall have the Search and Survey returned to Seller or Seller's attorney within 7 Business Days after receipt of a notice of cancellation.

ATC3. **COSTS.** Except as otherwise provided, in addition to the costs set forth elsewhere in this Contract, (i) Seller shall pay for the Search to the date of Closing and for the Survey, transfer tax, filing fee for transfer tax forms, recording fees for any documentation required to cure any Title Defects (as defined in Paragraph ATC5(B)), the special additional mortgage tax, all costs to be paid to the County Clerk to enable the deeds, in excess of one, to be recorded, any estimated New York State income tax due at Closing, and any additional transfer tax imposed under Tax Law Section 1402-a if Purchaser is exempt from paying such tax; and (ii) Purchaser shall pay the mortgage tax, fees for recording deed and mortgage(s), filing fee for Real Property Transfer Report, fee for certification of the Survey (if requested by Purchaser or Purchaser's attorney), mortgage holder's assumption and release of liability fees, any additional transfer tax imposed under Tax Law Section 1402-a, unless Purchaser is exempt from paying such tax, and, except as otherwise provided in this Contract, all fees, costs and other charges imposed or required by Purchaser's lender.

ATC4. **RIGHT TO FARM DISCLOSURE.** It is or may be the policy of the County to conserve, protect and encourage the development and improvement of agricultural land for the production of food and other products, and also for its natural and ecological value. This disclosure notice is to inform prospective residents that farming activities occur within the County. Such farming activities may include, but not be limited to, activities that cause noise, dust, fumes, odors, smoke, insects, operation of machinery during any hour of the day or evening, storage and disposal of plant and animal waste products, and the application of fertilizers, soil amendments, and pesticides by ground or aerial spraying or other method. Property owners and residents of the County should be aware that farmers have the right to undertake generally accepted practices and one should expect such conditions as a normal and necessary aspect of living in an agricultural area.

ATC5. **STATUS OF TITLE.**
(A) **Quality of Title.** At Closing, Seller shall convey to Purchaser good and marketable title to the Property and Included Items in fee simple, free and clear of all liens and encumbrances, except as stated in this Contract. Purchaser will accept title to the Property subject to (i) restrictions of record, provided they do not conflict with the Current Uses/Improvements, Intended Uses or Intended Improvements and have not been violated, unless their enforcement is barred by law; (ii) easements and rights-of-way of record for water lines, sanitary sewer lines, drainage, gas pipelines, electrical lines, media and communication lines, provided they are or may be used to service the Property and provided the Current Uses/Improvements, Intended Uses or Intended Improvements are not or will not be within the easements or rights-of-way areas; and (iii) the encumbrances itemized in Paragraph 11, if any.

(B) **Title Objections.** Purchaser's attorney shall notify Seller's attorney of all defects, liens and encumbrances to Seller's title to the Property to which Purchaser objects and which Purchaser is not required to accept under this Contract ("Title Defects"). Seller shall in good faith attempt to cure the Title Defects. Seller shall have the later of (i) 10 Business Days after Seller's attorney receives notice of the Title Defects, or (ii) the Contract Closing Date in which to cure the Title Defects. Purchaser shall accept title to the Property once the Title Defects are cured. If Seller cannot cure the Title Defects within the time period set forth above, but either Party can obtain an owner's title insurance policy reasonably and adequately insuring the uncured Title Defects in the amount of the Purchase Price naming Purchaser as insured, including all endorsements necessary to cover the Title Defects, a market value rider (if available) and a covenant by the issuing company to reissue the policy containing the same affirmative coverages ("Owner's Policy"), at standard rates and at no additional cost or obligation to Purchaser, then Purchaser shall accept the Owner's Policy and title to the Property. Seller shall in good faith comply with all reasonable requests of the title insurer to enable it to insure over the Title Defects, including all requirements relating to Title Defects occurring or arising during Seller's ownership of the Property.

(C) **Title Insurance.** Purchaser's attorney shall order any title insurance policy and any required endorsement insuring Purchaser's lender ("Loan Policy"). If an Owner's Policy is required under Paragraph ATC5(B), the Owner's Policy shall be issued by the company chosen by Seller's attorney, provided the premium for the Owner's Policy without a simultaneous Loan Policy is not greater than that for which Seller is responsible under Paragraph ATC5(D). Otherwise, the Owner's Policy shall be issued by the company issuing the Loan Policy, if available. If no Loan Policy is required or if an Owner's Policy is not available from the company issuing the Loan Policy, the Owner's Policy shall be issued by (i) the company chosen by Seller's attorney, or (ii) the company chosen by Purchaser's attorney if Seller's attorney does not obtain the Owner's Policy.

(D) **Title Insurance Premiums.** If Seller is required to provide an Owner's Policy under Paragraph ATC5(B) or CHAR3(B)(1)(a), if applicable, and if no Loan Policy is required or obtained, or if the Owner's Policy is not available from the company issuing the Loan Policy, Seller shall pay the premium for the Owner's Policy at the full standard rate. If a Loan Policy is required or obtained and if an Owner's Policy is required and is available

BAEC/BNAR Residential Contract (Rev. 03/15/18)

from the company issuing the Loan Policy, Purchaser shall pay the full premium for the Loan Policy, and Seller shall pay an amount equal to the combined premium for the Owner's Policy and simultaneous Loan Policy, less the premium for the Loan Policy at the standard rate.

(E) **Contract Termination.** If Seller cannot cure all Title Defects within the time period provided in Paragraph ATC5(B) and if an Owner's Policy insuring over the Title Defects cannot be obtained in accordance with Paragraph ATC5(B), (i) Purchaser may cancel this Contract, (ii) Purchaser may elect to accept title as Seller can convey, or (iii) Seller may cancel this Contract if Purchaser fails to elect to accept such title within 3 Business Days after Purchaser receives a demand by Seller to accept title to the Property.

(F) **Title Examination Standards.** The standards for title examination of the Bar Association applicable for the Property locality or, if none, BAEC standards, shall apply to this Contract.

ATC6. **DEED.** At Closing, Seller shall deliver to Purchaser all documentation, in recordable form where required, reasonably necessary for Seller to comply with this Contract including (i) a warranty deed with lien covenant if Seller is a natural person, (ii) a fiduciary deed with lien covenant if Seller is a fiduciary, (iii) a bargain and sale deed with lien covenant and covenants against grantor's acts if Seller is not a natural person, and/or (iv) a bargain and sale deed with lien covenant and covenant against grantor's acts for so much of the Property as may be affected by a Title Defect which is accepted by Purchaser or which will be insured over by an Owner's Policy.

ATC7. **INSPECTION AND UTILITIES.** Before Closing (but after a Loan Commitment has been accepted) and upon reasonable notice to Seller, Purchaser shall have the right to a single final inspection of the Property and Included Items ("Final Inspection"). Seller shall arrange for final utility readings and Purchaser shall arrange for the transfer of utility services to Purchaser effective as of the date of Closing.

ATC8. **POSSESSION.** Subject only to the tenancies listed on the *Rented Property Rider*, if applicable, at Closing, Purchaser shall have possession of all of the Property and Included Items and the Property shall be vacant.

ATC9. **PAYMENT OF ADJUSTED BALANCE.**
(A) **Acceptable Funds.** The Adjusted Balance shall be paid by:
(1) Cash, but not in excess of $500.00;
(2) Certified check(s) drawn on, or bank draft(s) or official check(s) issued by a New York State branch of any Financial Institution, with the original payee as Seller or as Seller's attorney may otherwise direct upon not less than 2 Business Days notice to Purchaser's attorney.
(3) As otherwise agreed to in writing by Seller or Seller's attorney.
(B) **Payment Accepted Subject to Collection.** Any non-cash payment is accepted subject to collection.

ATC10. **CANCELLATION.** Any cancellation made under any Paragraph of this Contract, other than Paragraph ATC1(A), shall be made by notice by the cancelling Party to the other Party ("Cancellation Notice"). The Cancellation Notice must state the reason for the cancellation and a copy of the Cancellation Notice must be delivered to the Escrow Agent. If the cancelling Party delivers a Cancellation Notice to the other Party and Escrow Agent and if a notice by the other Party objecting to the cancellation of this Contract ("Cancellation Objection Notice") is not received by the cancelling Party and Escrow Agent within 10 days following their receipt of a Cancellation Notice, or if this Contract is cancelled under Paragraph ATC1(A), this Contract shall automatically terminate upon that event, the Deposits shall be returned to Purchaser and neither Party nor the Brokers shall have any rights or obligations arising out of this Contract (other than obligations under this Contract that are intended to survive any cancellation or termination).

ATC11. **ESCROW.**
(A) **Trust Funds.** Escrow Agent's sole duties and responsibilities shall be as a stakeholder only to hold the Deposits in trust for the benefit of the Parties and disburse the Deposits following Closing or cancellation in accordance with this Contract notwithstanding that Escrow Agent may act as attorney or real estate broker for either Party in this transaction. At no time shall the Deposits be the property of Escrow Agent and at no time shall Escrow Agent earn any interest on the Deposits.
(B) **Brokers' Commissions.** The Brokers brought about this sale and, if this Contract is not validly cancelled by either Party, the Parties shall pay the entire compensation to the Brokers in accordance with their respective written agreements unless the Closing does not take place through no fault of the Party owing the compensation ("Commissions"). However, if no Brokers are identified in this Contract, each Party represents that such Party has not dealt with any person who brought about this sale. Each Party shall indemnify, defend and hold the other harmless from and against any and all causes of action, claims, damages, judgments, awards, expenses and fees (including reasonable attorneys' fees and court costs) in connection with any claim for compensation by any person for having brought about this sale.
(C) **Closing Disbursements.** If Escrow Agent has signed this Contract, Seller authorizes Escrow Agent to, and Escrow Agent shall, apply the Deposits at Closing, first to the payment of the Commissions owed by Seller, then to payment of Seller's costs as set forth in this Contract. The balance of the Deposits, if any, shall be paid to Seller or any other payee identified by Seller or Seller's attorney. In the event the Deposits are not sufficient to pay the Commissions owed by Seller, Seller authorizes Seller's attorney to, and Seller's attorney shall, pay the

296 & 298 Oliver Street   North Tonawanda   NY   14120

balance of the Commissions owed by Seller from the net proceeds due Seller at Closing. In the event Escrow Agent is the Listing Real Estate Broker, Escrow Agent will pay any Commissions due to the Selling Real Estate Broker out of Escrow Agent's escrow account within 7 Business Days after receipt of final payment from Seller.

(D) **Return of Deposits.** Except as otherwise provided in this Contract, Escrow Agent, in its capacity, is not subject to the unilateral direction of any Party with respect to the return of Deposits after cancellation. If this Contract is cancelled under Paragraph ATC1(A), Escrow Agent shall return the Deposits to Purchaser within 5 Business Days following Escrow Agent's receipt of a notice of disapproval or cancellation. If this Contract is cancelled under any other Paragraph in accordance with Paragraph ATC10, Escrow Agent shall return the Deposits to Purchaser within 14 days following Escrow Agent's receipt of a Cancellation Notice provided Escrow Agent did not timely receive a Cancellation Objection Notice. In all other cases, the Deposits shall be distributed by Escrow Agent to Seller or Purchaser as the case may be within 5 Business Days after the earliest of:

  (1) Escrow Agent's receipt of a mutual release (on a Bar Association approved form) executed and delivered by each of the Parties and Brokers to the others on terms agreed to by the Parties and Brokers that designates the manner in which the Deposits are to be distributed ("Release").;

  (2) Escrow Agent's receipt of a copy of a final non-appealable court order which directs how the Deposits are to be distributed; or

  (3) The date designated by Escrow Agent in a Notice of Intention (as defined below) as the date by which written objections to the release of the Deposits must be received by Escrow Agent, provided no written objection is received by Escrow Agent by such designated date. A "Notice of Intention" is a notice given by Escrow Agent to the Parties and their respective attorneys of Escrow Agent's intention to distribute the Deposits to Seller or Purchaser, as the case may be, due to a cancellation or breach of this Contract. The Notice of Intention shall be delivered by certified mail, return receipt requested and a copy by first class mail at least 7 days prior to such designated date and shall specify to whom the Deposits shall be distributed and the amount to be distributed to each. Escrow Agent shall deliver a Notice of Intention within 3 Business Days following Escrow Agent's receipt of a written demand for same from a Party.

  (4) In the event Escrow Agent receives a written objection pursuant to Paragraph ATC11(D)(3) by the date designated in the Notice of Intention, Escrow Agent may thereafter deposit the Deposits with any New York State court in whose jurisdiction any part the Property lies and commence an interpleader action to determine the disposition of the Deposits ("Interpleader Action"). Each Party shall reimburse Escrow Agent one-half of all expenses incurred by Escrow Agent, including court costs and reasonable attorneys fees, arising out of the commencement and prosecution of the Interpleader Action unless the court directs a different allocation of Escrow Agent's expenses.

(E) **Escrow Agent.** By accepting the Deposits, (i) Escrow Agent warrants that the individual signing on behalf of Escrow Agent is authorized to bind Escrow Agent and (ii) agrees to act in accordance with the terms of Paragraphs 4, ATC10, ATC11, ATC12, ATC13 and ATC14. Escrow Agent is not a party to this Contract for any other purpose and in such capacity shall not be liable for any damages under this Contract except for any act or omission inconsistent with the terms of this Contract.

(F) **Rights Retained.** Nothing contained in this Paragraph shall affect any right of either Party with respect to any claim against the Brokers.

ATC12. **NOTICES.**

(A) **Addresses.** All notices, demands and objections given under this Contract ("Notice(s)") shall be *in writing and delivered* in accordance with Paragraph ATC13, except as provided in Paragraph ATC11(D)(3), and a copy *should* be sent to the Brokers. Notice(s) to be delivered to Seller, Purchaser or Escrow Agent, other than those personally delivered, shall be delivered to Seller's, Purchaser's or Escrow Agent's address listed in this Contract, unless such Party has given notice to the other Parties of different address.

(B) **Notice by Attorney.** Notice(s) to Seller may be given or made by Purchaser or on behalf of Purchaser by Purchaser's attorney *with a copy to Seller* of only any notice of cancellation, notice declaring time of the essence or notice of satisfaction of any Sale Contingency. Notice(s) to Purchaser may be given or made by Seller or on behalf of Seller by Seller's attorney *with a copy to Purchaser* of only any notice of cancellation, notice declaring time of the essence or notice of acceptance of a Subsequent Agreement (as defined in Paragraph SCR2), if applicable.

ATC13. **ADDITIONAL REFERENCES/DEFINITIONS.** The following terms shall have the following meanings throughout, and in all modifications of, this Contract:

(A) **Delivery.** Unless otherwise specifically provided, any delivery of this Contract or Notice(s) ("Document(s)") shall be made by fax, personal delivery, first class mail, overnight delivery service or verified by a Signature Authenticator (as defined in ATC14(C)). If delivery is made by fax, an original or copy of the Document(s) shall be mailed by first class prepaid no later than 1 Business Day following the date of the confirmed fax transmission.

(B) **Receipt.**

  (1) If delivery is made by fax, the Document(s) transmitted shall be deemed received on the date the sender

Authentisign ID: 170FFE7... 
Case 23-06821    Doc 75-1    Filed 12/27/23    Entered 12/27/23 16:26:29    Desc Exhibit A    Page 14 of 20

BAEC/BNAR Residential Contract (Rev. 03/15/18)

      receives confirmation from the recipient's equipment that the entire transmission has been received, provided the required mailing is completed.

    (2) If delivery is made by personal delivery, the Document(s) delivered shall be deemed received on the date delivered.

    (3) If delivery is made by first class mail or overnight delivery service, the Document(s) delivered shall be deemed received 1 Business Day following the date upon which the Document(s) is/are deposited with the postal service with required postage affixed or with the delivery service with delivery charges prepaid or charged to the sender's account.

    (4) If delivery is made by certified mail as required by this Contract, the Document(s) delivered shall be deemed received (a) on the date the return receipt is signed, (b) on the date delivery is refused, or (c) if the mailing is not claimed. 3 Business Days following the date upon which the Document(s) is/are deposited with the postal service with required postage affixed, provided copies of the Document(s) was/were mailed by first class prepaid mail no later than 1 Business Day following the certified mailing.

    (5) If delivery is made by a Signature Authenticator, the Document(s) shall be deemed received by the recipient on the date of receipt as reflected in the records of the Signature Authenticator.

    (6) If delivery is made in a manner which does not comply with the provisions of Paragraph ATC13(A), including email to the intended recipient's email address and (a) the other Party or the other Party's attorney acknowledges receipt of the Document(s), or (b) receipt is otherwise established, the Document(s) shall be deemed received on the earliest of the date of the acknowledgment, the date of receipt set forth in the acknowledgment, or the date of receipt as otherwise established.

    (7) Notice(s) given by a Party's attorney in accordance with Paragraph ATC12(B), shall be deemed received on the earlier of the date the Notice(s) is/are received by the other Party or other Party's attorney.

(C) **Business Day.** "Business Day" shall mean calendar days excluding Saturdays, Sundays and legal holidays and shall end at 5:00 p.m. A day other than a Business Day shall end at 11:59 p.m.

(D) **Effective Date.** "Effective Date" shall mean the latest date on which a duplicate or copy of this Contract has been received by both Parties or their attorneys.

(E) **Use of Terms.** Whenever the term "including" is used, it shall mean "including but not limited to".

**ATC14. MISCELLANEOUS.**

(A) **Attorney's Fees.** In connection with any litigation concerning this Contract, the prevailing Party shall be entitled to recover reasonable attorney's fees and costs.

(B) **Captions.** The captions contained in this Contract are for convenience only and are not intended to limit or amplify the terms of this Contract.

(C) **Electronic Signatures.** The Parties, Brokers and Escrow Agent agree and consent that this Contract, and every demand, notice and objection given under this Contract, may be signed and initialed in any manner permitted by the laws of New York State including the Electronic Signatures and Records Act and applicable regulations ("ESRA"). Electronic signatures and initials verified by a person acting as a Certification Authority as provided under ESRA ("Signature Authenticator") shall be considered deemed originals.

(D) **Governing Law.** This Contract shall be interpreted and enforced in accordance with the laws of the State of New York without regard to the principle of conflict of laws. The invalidity or unenforceability of any provision of this Contract shall not affect the validity or enforceability of any other provision of this Contract.

(E) **Jurisdiction.** The Parties agree to submit to the jurisdiction of the Courts of the State of New York in the County in which the Property is located with respect to any dispute arising out of this Contract.

(F) **Parties Bound/Entire Agreement.** This Contract is intended to bind the Parties and Escrow Agent, and those who succeed to their interests, contains the entire agreement between the Parties, and, for purposes of Paragraphs 4, ATC10, ATC11, ATC12, ATC13 and ATC14, the Escrow Agent. Nothing is binding upon the Parties which is not contained in this Contract. *Any modification of this Contract must be in writing and signed by the Parties.* Nothing herein expressed or implied is intended or shall be construed to grant to any person, other than the Parties and those who succeed to their interests, any rights or remedies under or by reason of this Contract.

(G) **Survival.** The disclosures in Paragraph 6(R), (V) and (W) and the provisions of Paragraphs ATC11(B) and (F) and ATC14 shall survive the Closing or cancellation of this Contract. Any claim arising from failure to comply with Paragraphs 3(D)(5), 3(E)(4), 5, 13, 15, ATC2(C) and (D), ATC8, ATC9(B), ATC10 and ATC11(C) shall survive for 2 years after the Closing or cancellation of this Contract. Whether any other provision of this Contract survives the Closing shall be determined by applicable law or as specifically set forth in this Contract.

## Bankruptcy Rider
### to Residential Real Estate Purchase and Sale Contract

R-1.    This Rider is attached to and made a part of the printed Sales Contract to which it is attached for the sale of the property located at **286-290 Oliver Street, North Tonawanda, New York** ("Real Estate"), by and between **Ariane Holtschlag, not personally, but solely as bankruptcy trustee of the Estate of Muwafak S. Rizek**, Debtor(s) in the chapter 7 case pending in the Northern District of Illinois under **case number 23-06821** ("Seller"), and **Michael Gersitz**, ("Buyer").  In the event of a conflict or inconsistency between the terms of this Rider and the printed form Contract, the terms of this Rider shall control.

R-2.    This Sales Contract and the obligations contemplated hereby are and at all times shall be subject to and conditioned upon the prior approval of the United States Bankruptcy Court for the Northern District of Illinois in the bankruptcy case referenced above in R-1.  Seller shall promptly file a motion for approval of this Sales Contract ("Motion") with the United States Bankruptcy Court and use Seller's best efforts to schedule the court hearing upon the motion within a reasonable time. In the event Seller is unable to obtain an order approving the Sales Contract within 60 days of acceptance of the Sale Contract, or the Court denies the motion, this Sales Contract shall be deemed null and void and the earnest money deposit shall be returned to Buyer.

R-3.    Buyer acknowledges that Seller is required by applicable bankruptcy law to provide notice of the court hearing on the Motion to third parties who will be eligible to submit competitive bids for the Property at the time of the hearing, provided, however that any such competitive bids considered by Seller Trustee must be at least $3,000.00 higher than Buyer's bid, must be accompanied by a $10,000.00 earnest money deposit and must be on the same cash terms of the Sales Contract.  Further, Buyer fully acknowledges and understands that, at any time prior to Closing, the Bankruptcy Court may permit the above named Debtor and order that the Trustee to allow said Debtor to buy-out the Bankruptcy Estate's interest in the Real Estate.  In either situation, the Sales Contract shall be deemed null and void and the earnest money deposit shall be returned to Buyer.

R-4.    At a minimum of ten (10) days following entry of the Bankruptcy Court's order approving the Sales Contract and the proposed sale, Seller shall sell the Property to Buyer pursuant to sections 363 (b) and (f) of the Bankruptcy Code, free and clear of all liens, claims or interests (except for those permitted exceptions set forth in the Sales Contract), with any liens, claims or interests to attach to the proceeds of sale after payment of all closing costs.  Trustee shall convey the Property to Buyer by a recordable Trustee's quit claim deed in an "as-is, where-is" condition.

R-5.    Subject to Buyer's inspection rights under the Sales Contract, Buyer has or will have conducted such prior investigations and made such prior examinations of the Property and any records or other documents so as to be sufficiently informed of the nature and condition of the Property.  The Property is being sold in an "as is, where is" condition.  Seller has not made and expressly states that he is not hereby making any representation or warranty of any kind or nature with respect to the Property.  Seller does not provide a Bill of Sale for any personal property located thereon on the date of Closing and Buyer takes personal property "as-is" "where-is".   Buyer understands and acknowledges that the personal property as identified in Paragraph 2 of the Sales

Contract may not remain with the Real Estate and Buyer cannot claim any set-offs, credits or otherwise for any personal property that is removed prior to Closing. Further, any and all language stating that the Real Estate shall be left in broom swept condition is hereby deleted from the Sales Contract.

R-6   Buyer acknowledges and understands that irrespective of the provisions, covenants, conditions and Seller Obligations per the Sales Contract, Seller is not obligated to and shall not provide the following items customarily provided for by a Seller: Survey; Bill of Sale; Affidavit of Title; Well and Septic Insprctions and Reports.

R-7   Seller has never occupied the Property. Buyer shall rely solely upon Buyer's investigations, inspections, and due diligence regarding the acquisition of the Property and hereby affirmatively acknowledges that Buyer is not relying upon any representations or warranties of the Seller, whether so stated in the Sales Contract, orally or otherwise.

R-8.   This Contract is executed by Ariane Holtschlag, not personally, but solely as bankruptcy trustee, in the exercise of the power and authority conferred upon and vested in her pursuant to the United States Bankruptcy Code, 11 U.S.C. section 101, *et seq*. No personal liability shall be asserted or be enforceable against the Seller Trustee, individually, and the Bankruptcy Estate of the Debtor, because or in respect of the execution of this Contract, the performance of the obligations hereunder, or the transaction contemplated hereby, all such liability, if any, being expressly waived by Buyer.

R-9   In the event of a Seller breach, Buyer's only remedy shall be the return of the earnest money and termination of the Contract. Buyer waives any and all right to sue the Seller or the underlying Bankruptcy Estate as named in R-1 hereinabove. Situations sometimes arise where an issue on title may not be cleared by Seller and that Seller may not transfer the property free and clear. If such an issue arises, either party may terminate the contract and the contract shall be deemed null and void and Buyer shall be entitled to return of Buyer's earnest money.

| Buyer: | Seller: |
|---|---|
| _____ | _____ |
| Michael Gersitz | Ariane Holtschlag, Not Individually, but as Trustee in Bankruptcy |
| | |
| Buyer Broker (if any): | Seller Broker: |
| _____ | _____ |
| | Howard Saperston |

{00227512}

VACANT LAND RIDER (VLR) (Rev. 04/06/21)
Prior versions are obsolete.

© 2021 by Buffalo Niagara Association of REALTORS®, Inc.
© 2021 by Bar Association of Erie County



# VACANT LAND RIDER



RIDER TO CONTRACT dated: __11/28/2023__ ("Contract")
between _____
__Muwafak Rizek__ ("Seller")
and __Michael Gersitz__
_____ ("Purchaser")
regarding: __290 Oliver Street__  __North Tonawanda__  __NY 14120__ ("Property").

The Parties agree that the following additions and/or modifications are hereby made to this Contract:

**VLR1. INTENDED USES/IMPROVEMENTS.** Purchaser's Intended Uses and Intended Improvements in Paragraph 12(A) is completed as:
(A) ☐ a single family dwelling with a ___ car garage and _____
(B) ☐ a _____ family dwelling with a ___ car garage and _____
(C) ☐ a _____
all in the size, design and location of Purchaser's choice.
(D) ☒ unimproved land.

**VLR2. SELLER'S DISCLOSURES.** Seller makes the following disclosures to the best of Seller's knowledge (*NOTE: complete each item*):
(A) The Property is currently zoned for residential use as a ☐ one ☐ two ☐ three ☐ four family dwelling or
☐ _____.
(B) The Property is wholly or partially either Federal or State Wetlands . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No
(C) The public municipal road referred to in Paragraph 6(P)(1) is known as
_____ ("Road").
(D) There are currently the following easements and lines, for servicing the Intended Improvements, located (i) on the Property, along the entire Property line contiguous to the Road **and** no more than 15 feet in width; or (ii) within the Road, along and no more than 5 feet from the entire Property line contiguous to the Road:

    (1) electric . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes ☐ No ☐ Other
    (2) natural gas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes ☐ No ☐ Other
    (3) public water . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes ☐ No ☐ Other
    (4) public sanitary sewer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes ☐ No ☐ Other
    (5) public storm sewer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes ☐ No ☐ Other
    (6) telephone . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes ☐ No ☐ Other
    (7) cable television . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes ☐ No ☐ Other

If "Other" is checked, attach an explanation.

**CAUTION:** Seller is not guaranteeing the availability or location of utilities. Purchaser should verify the location and cost of connecting to utilities.

(E) The Property is subject to special assessments for public improvements
(for example: sewers, lighting, sidewalks, water, etc.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

**VLR3. SURVEY STAKING.** The Property is to be staked by the surveyor at Seller's expense . . . . . . . . . ☐ Yes ☐ No

**VLR4. PROPERTY INVESTIGATION.**

| Seller Initials | 290 Oliver Street  North Tonawanda NY 14120<br>[Property Address]<br>Page 1 of 2 | MG Purchaser Initials |
|---|---|---|



Authentisign ID: 170FFE7F-5A8E-EE11-9937-6045BD0D6816
Case 23-06821    Doc 75-1    Filed 12/27/23    Entered 12/27/23 16:26:29    Desc Exhibit
A    Page 18 of 20

BAEC/BNAR Vacant Land Rider (VLR) (Rev. **04/06/21**)

(A) **Applicability.** The provisions of this Paragraph VLR4 shall apply in lieu of Paragraphs 8 and 9 and the last sentence of Paragraph 12(A)(3).

(B) **Investigation.** Within 30 days following the satisfaction or waiver of the Attorney Approval Contingency ("Investigation Period"), Purchaser shall complete all tests, inspections, investigations and/or cost estimates ("Investigations") desired by Purchaser to determine that the Property is acceptable for the Intended Uses and Intended Improvements (for example: percolation test, availability of well water, location of and cost of connecting to utilities, review of restrictive covenants, subdivision compliance, availability of building permit, soil tests, environmental and archeological tests and investigations, zoning, flood plain and/or wetlands status, etc.). The results of the Investigation must be satisfactory to Purchaser ("Investigation Contingency"). The cost of the Investigations shall be paid by Purchaser, except for the following which shall be paid by Seller: _____.

(C) **Cooperation.** Without the written consent of Seller, no investigations shall be conducted which would result in physical damage to the Property. Seller will otherwise cooperate with Purchaser's Investigations, in such fashion as may be reasonably requested by Purchaser. Upon request of Purchaser, Seller shall promptly deliver to Purchaser or Purchaser's attorney a copy of any title search and survey map relating to the Property in the possession of Seller, Seller's attorney or Listing Broker and a complete copy of each record and report reasonably available to Seller at a nominal cost to Seller pertaining to any of the matters being investigated by Purchaser. Upon request of Seller, Purchaser shall promptly deliver a copy of each record and report available to Purchaser pertaining to any of the matters investigated. Upon completion of the investigations, Purchaser shall cause the Property to be returned to substantially the same condition as existed on the Contract Date.

(D) **Right to Cancel Contract.** If the results of any Investigations are unacceptable to Purchaser for any reason, Purchaser shall notify Seller or Seller's attorney in writing (the results need not be disclosed). In such case, either Party may cancel this Contract. **Purchaser's notice of unacceptable results *must* be received by Seller or Seller's attorney before the expiration of the Investigation Period.** If Purchaser's notice of unacceptable results is not received by Seller or Seller's attorney before the end of the Investigation Period, this contingency is deemed waived by Purchaser.

| Seller | Date | Purchaser *Michael Gersitz* (Michael Gersitz) | Date 11/28/2023 |
|---|---|---|---|
| Seller | Date | Purchaser | Date |
| Seller | Date | Purchaser | Date |
| Seller | Date | Purchaser | Date |

290 Oliver Street          North Tonawanda NY 14120
[Property Address]
Page 2 of 2

TRANSACTIONS
TransactionDesk Edition

Authentisign ID: 170FFE7F-5A8E-EE11-8925-6045BD068161

LEAD-BASED PAINT RIDER (LBPR) (Rev. 03/15/18)  © 2018 by Buffalo Niagara Association of REALTORS®, Inc.
*Prior versions are obsolete.*  © 2018 by Bar Association of Erie County




# LEAD-BASED PAINT RIDER AND DISCLOSURE

RIDER TO CONTRACT dated: _____ ("Contract")
between _____
_____ ("Seller")
and _____Michael Gersitz_____
_____ ("Purchaser")
regarding: _290   Oliver Street_____ _North Tonawanda_____ _NY_ _14120_ ("Property").

The Parties agree that the following additions and/or modifications are hereby made to the Contract:

**LBPR1. VALIDITY OF CONTRACT.** Federal Regulations require that Seller provide the disclosures in Paragraph LBPR4 *before* the Contract becomes binding on Purchaser. If any such disclosures are changed after Purchaser signs the Contract, Purchaser may cancel the Contract.

**LBPR2. LEAD WARNING STATEMENT.** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**LBPR3. LEAD HAZARD INFORMATION PAMPHLET.** Seller shall deliver to Purchaser the EPA approved lead-hazard information pamphlet, *Protect Your Family From Lead in Your Home*. Intact lead-based paint that is in good condition is not necessarily a hazard.

**LBPR4. SELLER'S DISCLOSURES.** *(Check all applicable boxes.)*

Initials & Date [MG 11/28/2023 Purchaser / Seller]

(A) **Presence of Lead-Based Paint and/or Lead-Based Paint Hazards.** (Check either (1) or (2) below.)

☐ (1) **Hazards Known.** Attached hereto is a statement signed by Seller disclosing the presence of known lead-based paint and/or lead-based paint hazards at the Property, including but not limited to the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards and the condition of the painted surfaces.

☐ (2) **Hazards Unknown.** Seller has no actual knowledge of the presence of lead-based paint and/or lead-based paint hazards at the Property.

Initials & Date [MG 11/28/2023 Purchaser / Seller]

(B) **Records and Reports Available to Seller.** *(Check either (1) or (2) below.)*

☐ (1) **Record Provided.** The following is a list of all records and/or reports available to Seller pertaining to lead-based paint and/or lead-based paint hazards at the Property.

_____
_____

☐ (2) **No Records.** Seller has no records or reports pertaining to lead-based paint and/or lead-based paint hazards at the Property.

290   Oliver Street        North Tonawanda NY  14120
[Property Address]
Page 1 of 2

Instanet FORMS

BAEC/BNAR Lead-Based Paint Rider (LBPR) (Rev. 03/15/18)

**(C) Validity of Information.** This Rider was prepared based on information previously provided by Seller either verbally or as part of Seller's listing information.

**LBPR5. RISK ASSESSMENT.** *Choose either (A) or (B) below ("(A)", if blank).*

☐ **(A)** Purchaser hereby waives the opportunity to conduct a lead-based paint hazard risk assessment or inspection.

☐ **(B)** This Contract is contingent upon a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards being obtained by Purchaser at Purchaser's expense within 10 days after the Effective Date ("Lead Paint Inspection Period"). The results must be satisfactory to the Purchaser ("Lead-Based Paint Inspection Contingency"). If the results of such inspection are unacceptable to Purchaser for any reason whatsoever, Purchaser shall notify Seller within 2 Business Days after the end of the Lead Paint Inspection Period, together with a copy of the inspection and/or risk assessment report. In such case, either Party may cancel this Contract. A copy of such notice(s) *should* be delivered to the Brokers. If Purchaser does not notify Seller of any unacceptable results within 2 Business Days after the end of the Lead Paint Inspection Period, the Lead-Based Paint Inspection Contingency is deemed waived by the Purchaser. Seller will cooperate with Purchaser's inspection in such fashion as may be reasonably requested by Purchaser. Purchaser may remove this contingency at any time without cause.

**LBPR6. PURCHASER'S ACKNOWLEDGMENT.**

**(A)** Purchaser has received copies of all information, records and/or reports set forth in Paragraph LBPR4 of this Rider or attached to this Contract, or has been informed that <u>no</u> such information, records and/or reports exist.

**(B)** Purchaser has received the EPA approved lead hazard information pamphlet, *Protect Your Family From Lead in Your Home*.

**LBPR7. CERTIFICATION OF ACCURACY.** Seller and Purchaser have reviewed the information above and each certifies to the best of his/her/their knowledge that the statements he/she/they have provided are true and accurate.

| Seller | Date | Purchaser *Michael Gersitz* Michael Gersitz | Date 11/28/2023 |
|---|---|---|---|
| Seller | Date | Purchaser | Date |
| Seller | Date | Purchaser | Date |
| Seller | Date | Purchaser | Date |

AGENTS' ACKNOWLEDGMENT

Each real estate agent who receives compensation from payment made by Seller acknowledges that he/she:
(a) prepared this Rider based on information previously provided by Seller either verbally or as part of Seller's listing information;
(b) has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d);
(c) is aware of his/her duty to ensure compliance; and
(d) certifies that his/her statements are true and accurate to the best of his/her knowledge.

| Agent | Date | Agent *Michael Gersitz* 11/28/23 Michael Gersitz | Date 11/28/23 |
|---|---|---|---|

290 Oliver Street        North Tonawanda NY  14120
[Property Address]

Page 2 of 2

Instanet FORMS